UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI

| | | |
|---|---|---|
| SCOTT CUNNINGHAM, | ) | |
| ANDREW HOLZMANN, and | ) | |
| TROY LOWN, individually | ) | |
| and on behalf of all others | ) | |
| similarly situated, | ) | |
| | ) | |
| Plaintiffs, | ) | Case No. |
| | ) | |
| v. | ) | **JURY TRIAL DEMANDED** |
| | ) | |
| UNITED AIR LINES, INC., and | ) | |
| AIR LINE PILOTS ASSOCIATION, | ) | |
| | ) | |
| Defendants. | ) | |

## CLASS ACTION COMPLAINT

For their complaint, plaintiffs state:

### <u>Jurisdiction and Venue</u>

1.     Plaintiff Scott Cunningham is a person, and lives in Illinois.

2.     Plaintiff Andrew Holzmann is a person, and lives in California.

3.     Plaintiff Troy Lown is a person, and lives in Oregon.

4.     Defendant United Air Lines, Inc. ("United") is a Delaware corporation that operates a commercial airline and conducts business in the Eastern District of Missouri.

5.     Defendant Air Line Pilots Association ("ALPA") is a labor union headquartered in Washington, D.C. that conducts business in the Eastern District of Missouri.

6.     The case arises under the Railway Labor Act, 45 U.S.C. §§ 151, *et seq.*

## Factual Background

7.　　Plaintiffs are commercial pilots employed by United.

8.　　On October 1, 2010, United acquired Continental Airlines ("Continental") in what was termed a "merger of equals."  In March 2012, United ceased operating Continental as a separate airline.

9.　　ALPA is the certified collective bargaining agent for all of United's pilots, including plaintiffs.  In December 2012, United and ALPA entered into a new collective bargaining agreement that governs the pay and work rules of United's pilots (the "CBA").

10.　　The CBA contains a so-called "longevity" provision that United and ALPA have improperly applied to plaintiffs and approximately 470 other similarly situated United pilots (the "Class") to substantially under-pay them since December 1, 2012.

11.　　On plaintiffs' information and belief, ALPA intends to use that same longevity provision in an effort to further discriminate against plaintiffs and the Class when ALPA integrates the pilot seniority lists of the "legacy," or previously separate United and Continental airlines.

## Class Allegations

12.　　Plaintiffs bring their claims as individuals and as representatives of a Class pursuant to Fed.R.Civ.Proc. 23.

13.　The proposed Class would be defined as follows:

All persons employed as pilots by United as of December 1, 2012 who were initially hired by United before May 6, 2008, were furloughed by United after May 6, 2008, and were subsequently hired by Continental and/or United after October 1, 2010.

14.　The Class consists of approximately 473 individuals, all pilots. It is so numerous that joinder of all members is impracticable, and the members of the Class reside throughout the country.

15.　The questions of law or fact raised in this case which are common to the Class predominate over the very limited questions that are individualized to the Class members. These predominate, common questions of fact and law include, but are not limited to:

a.　whether the Class members' longevity is being properly credited under the CBA;

b.　whether a side "Letter of Agreement 25" relied upon by United to reduce the Class members' longevity is properly applied to them;

c.　whether United breached its CBA in under-paying the Class members;

d.　whether ALPA acted in an arbitrary manner in agreeing with United to reduce the Class members' longevity;

e.　whether ALPA acted in a discriminatory manner in agreeing with United to reduce the Class members' longevity;

f.　whether ALPA acted in bad faith in agreeing with United to reduce the Class members' longevity;

g.　whether ALPA breached its duty to fairly represent the Class members;

h. whether United is implicated in or colluded with ALPA in the breach of its duty of fair representation to the Class members; and

i. whether United and ALPA's interpretation of the CBA is discriminatory towards the Class members.

16. Plaintiffs' claims are typical of the claims held by the Class.

17. Plaintiffs will fairly and adequately protect the interests of the Class, as they have the same interest as the Class in prosecuting their claims.

18. Plaintiffs have retained qualified and experienced labor litigation and class action counsel to represent them and the absent Class members.

## <u>Count 1 – Breach of Contract Against United</u>

19. Plaintiffs incorporate the allegations in paragraphs 1 through 18 as if fully set forth herein.

20. When United acquired Continental in October 2010, each airline had a separate CBA with ALPA. United and ALPA thereafter negotiated a new CBA that would govern the pay and work rules of the pilots of the combined airline.

21. The new CBA was made effective on December 15, 2012, with pay provisions made retroactive to December 1.

22. Under the new CBA, a pilot's hourly pay rate is determined by three basic factors: (1) his or her "longevity;" (2) his or her rank (Captain or First Officer); and (3) the type of aircraft he or she flies.

23. Under the new CBA, a pilot's pay longevity is determined by the date he or she was "hired as a Pilot" by United or Continental, and includes time while he or

she was furloughed from either airline. For pay purposes, longevity is capped at 12 years under the new CBA.

24. Plaintiff Cunningham was hired by United in August 1999; plaintiff Holzmann was hired by United in January 2000; and plaintiff Lown was hired by United in June 1999. Plaintiffs were each twice furloughed, but are currently flying for United. Their actual longevity for purposes of their pay as defined in the new CBA exceeds the 12 year cap.

25. Although plaintiffs' longevity exceeds 12 years, beginning on December 1, 2012, United has, improperly and contrary to the CBA, given plaintiffs credit for only 4 years and 7 months of longevity for purposes of determining their pay; specifically from May 7, 2008 through December 1, 2012. Every member of the Class has actual longevity with United that exceeds 4 years and 7 months, but like plaintiffs, they were each given credit for only 4 years and 7 months as part of the new CBA.

26. United's actions in reducing plaintiffs' and the Class members' longevity to only 4 years and 7 months violates the express terms of the CBA.

27. Plaintiffs and the Class members have been damaged as a result of United's breach in that United has substantially under-paid them since December 1, 2012.

28. The Class members' individual losses vary based on the date they were each hired by United. Like plaintiffs, the vast majority of Class members were hired before 2002, and have been under-paid between $12 and $15 per hour since December 1, 2012. United did not hire any new pilots after the events of 9/11 until 2007, but a

small number of Class members were hired in 2007 and the first quarter of 2008, and have been under-paid approximately $3 per hour since December 1, 2012.

29.     Plaintiffs' breach of contract claim against United is an arbitrable "minor dispute" under the Railway Labor Act.  The Court, however, has subject matter jurisdiction of the claim because plaintiffs' administrative remedy is wholly futile.  The arbitration panel that would decide plaintiffs' claim would consist of one arbitrator selected by United, one arbitrator selected by ALPA, and a third independent arbitrator.  It would be futile, however, to arbitrate before such a panel, because ALPA, in breach of its duty of fair representation as alleged in Count 2, was in collusion with United in its breach of contract.  The United and ALPA arbitrators would thus clearly outvote the independent arbitrator in what would be a basically "rigged" arbitration.

## Count 2 – Breach of Duty of Fair Representation Against ALPA

30.     Plaintiffs incorporate the allegations in paragraphs 1 through 29 as if fully set forth herein.

31.     ALPA is the largest pilot union in the world.  It represents nearly 51,000 pilots at 35 airlines in the United States and Canada.

33.     The pilots of each individual ALPA-represented airline do not have their own individual "local" unions as in some labor organizations.  Instead, ALPA is a unitary union that represents all of its pilot members.

33.     At the local level of each ALPA-represented airline, ALPA has a governing body called the Master Executive Council (the "MEC").  The individual MECs are

responsible for carrying out ALPA's business at that particular airline. The members of each individual airline MEC are elected by the pilots at that airline.

34.     Prior to the United/Continental merger, ALPA represented the pilots of both airlines through separate MECs elected by the pilots of each airline.

35.     After the United/Continental merger, ALPA continued to represent the pilots of the merged airline through its separate legacy United and Continental MECs, not a newly constituted MEC elected by the pilots of the combined airline.

36.     The new CBA was jointly negotiated by committees from the legacy United and Continental MECs, but that agreement left unresolved one major labor issue connected with the United/Continental merger – the integration of the pilot seniority lists of each previously separate airline.

37.     Seniority is critically important to a pilot's career, and seniority integration is typically a highly contentious issue in any airline merger. The process of resolving the issue often creates acrimony between the two pilot groups.

38.     In a so-called ALPA-to-ALPA merger, as with the United/Continental merger, the legacy MECs of the previously separate airlines are responsible for integrating the seniority lists. In an effort to help assuage the acrimony typically created by that process, ALPA has a national "Merger Policy" the MECs are to follow to combine the seniority lists of merged airlines. The Merger Policy identifies the following three non-exclusive factors the MECs are to consider "in constructing a fair and equitable integrated seniority list:"

\*  Career expectations;

\*  Longevity; and

\*  Status and category.

39. As alleged in Count 1, United improperly reduced plaintiffs' and each Class member's longevity to 4 years and 7 months as part of the new CBA, while every other United pilot retained his or her actual full longevity. United did so at the insistence of the ALPA Continental MEC which, insisted on reducing the Class members' longevity in order to improperly manipulate the longevity factor of the ALPA Merger Policy to the detriment of the Class, and in favor of the junior legacy Continental pilots, the most junior of which were hired in May 2008.

40. United and ALPA's agreement in this regard is evidenced in a side "Letter of Agreement" identified as "LOA 25" entered into between United and ALPA as part of the new CBA, paragraph 4 of which provides as follows:

> Upon date of signing [the CBA], any pilot who is, or previously was, furloughed and whose accrued pay longevity is less than that of pilots hired on or before 5/6/08 shall receive additional pay longevity credit for time spent on furlough, but only to the extent that such credit does not provide a pay longevity date prior to 5/7/08.

41. The May 6, 2008 date set out in paragraph 4 of LOA 25 is not coincidental. It is the date the most junior legacy Continental pilots were hired, and the reason the Class members' longevity was arbitrarily reduced to 4 years and 7 months; i.e. May 7, 2008 through December 1, 2012.

42. Each Class member was hired **before** May 2008, and their actual longevity is greater than 4 years and 7 months. As a result, the express terms of

paragraph 4 of LOA 25 do not apply to the Class. ALPA and United have nevertheless agreed otherwise, and have agreed to discriminate against the Class by limiting each member's longevity to 4 years and 7 months, while every other United pilot is given full credit for his or her actual longevity with the airline.

43. There is no rational basis for ALPA's agreement to discriminate against plaintiffs and the Class members in reducing their longevity. The reason ALPA did so relates solely to the upcoming process to integrate the seniority lists of the legacy Continental and United pilots.

44. Longevity is one of the three factors in the ALPA Merger Policy to be considered in integrating the seniority lists, and the arbitrary reduction of the Class members' longevity was at the insistence of the Continental MEC. It did so in order to manipulate the longevity factor, in favor of the most junior legacy Continental pilots and to the detriment of the Class, by allowing the Continental MEC to argue that every Class member should be placed on the integrated seniority list below the most junior legacy Continental pilot hired in May 2008.

45. ALPA's discriminatory agreement with United has already caused United to under-pay plaintiffs and the Class since December 1, 2012, but it would have a devastating and irreparable impact on plaintiffs' and the Class members' careers if that agreement is also used to impair their seniority.

46. ALPA owes a duty to fairly represent all of its members. It breaches that duty when it acts in an arbitrary or discriminatory manner or in bad faith.

47. ALPA breached its duty to fairly represent the plaintiffs and the Class by entering into paragraph 4 of LOA 25, and by agreeing that its provisions apply to plaintiffs and the Class to reduce their longevity at United to just 4 years and 7 months. Those agreements were wholly arbitrary, discriminatory on their face, and entered into in bad faith in an effort to manipulate plaintiffs' and the Class members' longevity to their detriment and in favor of the most junior legacy Continental pilots.

48. ALPA's breaches of its duty to fairly represent plaintiffs and the Class members have damaged them in that ALPA's agreements have allowed United to under-pay plaintiffs and the Class as alleged in Count 1. Those damages continue.

## Count 3 – United's Complicity in ALPA's Breach

49. Plaintiffs incorporate the allegations in paragraphs 1 through 48 as if fully set forth herein.

50. Paragraph 4 of LOA 25, and ALPA's and United's interpretation of it to reduce plaintiffs' and the Class' longevity to 4 years and 7 months, are discriminatory on their face.

51. United colluded with ALPA in making those agreements and its breach of its duty of representation in order to secure ALPA's approval of the new CBA.

52. As a result of the facially discriminatory agreements entered into between United and ALPA, and their collusion, those agreements are voidable, and the Class members' longevity should be restored to their date of hire at United as provided in the new CBA.

## Prayer For Relief

Plaintiffs request the Court enter the following:

A.     An Order certifying the Class as described herein;

B.     An Order declaring that plaintiffs' and the Class members' pay longevity be determined from their date of hire at United with full credit for their time on furlough;

C.     A Judgment against United and ALPA jointly and severally for plaintiffs' and the Class' actual damages shown at trial; and

D.     Such other relief as the Court deems proper.


                              GREEN JACOBSON, P.C.


                         By: /s/ Allen P. Press
                              Allen P. Press     MO #39293
                              7733 Forsyth Blvd., Suite 700
                              Clayton, Missouri 63105
                              Phone: 314-862-6800
                              Fax: 314-862-1606
                              press@stlouislaw.com

                              Attorneys for Plaintiffs